# HYDRAULIC CEMENT BLOCK COMPANY v. CHRISTENSEN.

No. 2170. Decided February 25, 1911 (114 Pac. 524).

1. APPEAL AND ERROR—REVIEW. Where evidence which may or not be material and relevant, depending on whether other evidence is introduced, is admitted provisionally on such other evidence being introduced, it is necessary to convict the court of error to move to strike it out on such other evidence not being introduced, and, the motion being denied, to except to such ruling. (Page 530.)

2. TRIAL—INSTRUCTIONS—REQUESTS. Refusal of requested instructions, either too broad or too restricted, is not error, though the court might well have charged on subjects suggested thereby. (Page 530.)

3. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE. A show-
ing of diligence to produce the evidence on the trial is necessary
to entitle one to new trial for newly discovered evidence. (Page
531.)

4. REPLEVIN—SUFFICIENCY OF EVIDENCE. Judgment for defendant
in replevin on a bill of sale unconnected with plaintiff's title is
unjustified, there being uncontradicted evidence that plaintiff
had previously bought the property, and no evidence that it had
parted with its title. (Page 532.)

APPEAL from District Court, Seventh District; *Hon. A. H. Christensen,* Judge.

Action by Hydraulic Cement Block Company against W. E. Christensen.

Judgment for defendant. Plaintiff appeals.

REVERSED, AND NEW TRIAL DIRECTED.

*S. A. King* for appellant.

*L. O. Hoffman* for respondent.

FRICK, C. J.

Appellant, as the alleged owner, brought this action to recover from the respondent a team, wagon, and one set of double harness. The complaint is in the usual form in an action of claim and delivery. The respondent in his answer denied the allegations of the complaint, and alleged ownership in himself. A trial to a jury resulted in a verdict for respondent. The court entered judgment on the verdict, and the appellant prosecutes this appeal.

The evidence at the trial, in substance, was to the effect that in March, 1908, at Green River, Utah, the appellant was the owner, and in possession, of a team consisting of a horse and a mare of the value of three hundred and seventy-five dollars, a Fish Brothers lumber wagon of the value of one hundred dollars and a set of double harness of the value of forty dollars; that the team at the time aforesaid was in

the possession of and was used by the Mutual Irrigation Company. A Mr. Spaulding who at the time was employed by the Merrill-Bollinger Company at Green River was informed by a Mr. Fisher that he, Mr. Fisher, desired to buy a team, wagon, and harness. Mr. Spaulding knew that the officers of appellant wanted to sell the team, wagon, and harness in question, and he so informed Mr. Fisher. Mr. Fisher said he could pay for the outfit in about ten days, but Spaulding informed him that all of the officers of the appellant were absent from Green River, and that he, Spaulding, had no authority to sell or dispose of the team. Fisher replied to this by saying that he needed a team and wagon immediately. Upon this statement, Spaulding proposed that Mr. Fisher hire the outfit at the rate of one dollar and fifty cents per day until some of the officers aforesaid returned to Green River, at which time he could arrange the matter with them. This Mr. Fisher agreed to do, and took the team upon the conditions aforesaid. Some time afterwards, when some of the officers returned to Green River, Spaulding informed them of what he had done, and they saw Mr. Fisher, and, instead of selling the team, wagon, and harness to him, he hired the outfit from them at the rate of one dollar and fifty cents per day, and thereafter paid appellant on several occasions different sums of money, which it is claimed was applied as payment for the services of the team. Mr. Fisher, however, soon left Green River with the team, wagon, and harness, and none of the officers of appellant seemed to know where he had gone, or what caused him to leave. On April 19, 1908, the respondent, under the name of "Mat Warner," wrote to Mr. Spaulding from Price, Utah, about the team that "Fisher got of you. He sold it to Wright, and I thought it might concern you to learn it. The team is held by Wright. He paid two hundred and twenty-five dollars for it and gave a note for two hundred and twenty-five dollars. Now, if there is anything wrong, let me know." As soon as Mr. Spaulding received the foregoing letter, he informed the officers of appellant, and they at once went to Price, Utah, to see about the matter. At this point the evidence is some-

what conflicting. The officers contended that they informed
respondent fully regarding the title and ownership of the
team, wagon, and harness, and that Fisher had "stolen"
the same, and that no one had any right to sell the team.
Fisher in the meantime had left the country, and no one
seemed to know his whereabouts.   It also was made to ap-
pear that, when Spaulding made the arrangement with Fisher
about the team, he gave Mr. Fisher an order on Mr. Can-
field, who had charge of the affairs of the Mutual Irrigation
Company aforesaid, and in whose possession the team was.
The order is as follows: "Green River, Utah, March 11,
1908.  Mr. Canfield.  Dear Sir:  I have sold the block team
to Mr. Fisher and wish you would let his team off one day
to haul the balance of the flume lumber which will take one
day.  Yours, T. D. Spaulding."  Mr. Spaulding says that
he wrote the foregoing order in that form, because he knew
that, if he told Canfield that he merely "hired the team,"
Canfield might not let Fisher have it, since Canfield wanted
teams to work for the irrigation company.  The respondent
says he saw the order to Canfield before he bought the team
from one R. A. Wright, of Price, Utah.  Respondent, over
appellant's objection, was permitted to introduce in evi-
dence a bill of sale from said R. A. Wright for an "undi-
vided one-half interest in and to" the team, wagon, and two
sets of double harness, and also a bill of sale from said
Wright to one Sedse Rhoades for an "undivided one-half
interest in and to" the team, wagon, and harness and other
property, and also admitted an agreement between respond-
ent and said Sedse Rhoades relative to the use of the property
aforesaid.  At the time the court admitted in evidence the
foregoing bills of sale and agreement, the court said that
they were admitted provisionally only, and upon the condi-
tion that respondent would in some way show that Wright's
claim of title to the property in question was connected with
appellant's claim of title thereto, and that the court would
charge the jury to that effect.  The court also admitted sec-
ondary evidence of some receipts which it was claimed were
given by appellant to Fisher for money received from him

by it. There was also uncontradicted evidence to the effect that appellant had bought the team, wagon, and harness some years before the action was commenced; that it was a corporation of this state; that Spaulding at no time was an officer, director, stockholder, agent, or servant of said corporation; that he had no authority to sell said team, wagon, and harness; and that no officer, director, or any other agent of said corporation at any time sold said team, wagon, and harness to any one, and that said corporation had at no time parted with its title to said property. There was also some evidence to the effect that some years before the action was commenced the Merrill-Bollinger Lumber Company, another corporation, was in possession of the property involved in this action. There is absolutely no direct evidence, however, that said company owned said property at any time, or that it continued to own the same, or, if it had owned the property, that it had parted with its title thereto to any one under whom respondent claimed his title. The whole matter, so far as said company's connection with the property is concerned, is left to conjecture. For some reason, appellant did not immediately after the officers had gone to Price in response to "Mat Warner's" letter commence this action, but deferred bringing it for a number of months thereafter. The verdict is based upon substantially the foregoing facts.

The first assignment of error relates to the bills of sale and agreement before referred to. It is contended that the court committed prejudicial error in admitting in evidence the bills of sale and agreement aforesaid. At the time they were offered in evidence, appellant's counsel objected to their admission upon the grounds that they were "incompetent, irrelevant, and immaterial." The objection was overruled, and the court in admitting them stated at the time that he did so "provisionally upon their being connected with the plaintiff in the case." It is now contended by counsel that respondent did not connect the title sought to be transferred by the bills of sale with appellant's title, and hence it is urged the bills of sale were not evidence as against appellant for

38 Utah—34

any purpose. We are of the opinion that there is no evidence from which the jury were justified in finding that the bills of sale were in any way connected with appellant's title to the property in question, and hence, in view of the issues, they were not evidence as against appellant for any purpose. When the bills of sale were offered in evidence, however, the court was unable to see or determine whether they would or would not become material and relevant. The question of admitting them in evidence, therefore, was one merely of order of proof, which was a matter largely, if not entirely, within the discretion of the court. Although the bills of sale were not connected with appellant's title, yet, in view of the circumstances, the court committed no error by merely admitting them in evidence at the time they were admitted. Where evidence is admitted, therefore, which for the reasons aforesaid becomes immaterial or irrelevant, the party against whom it is admitted, in order to have the question reviewed in this court, must move to strike the objectionable evidence from the record, or ask the court to withdraw it from the consideration of the jury, and, if the court refuses to do so, he must except to the ruling and predicate his error upon such ruling. In this case no such motion or request was made, and hence appellant cannot avail himself of the alleged error covered by this assignment.

Appellant also assigns numerous other errors relative to the admission and exclusion of evidence. While the court might well have sustained some of appellant's numerous objections, yet the evidence which was either admitted or excluded was of such a character that the admission upon the one hand, and the exclusion upon the other, could in no way have prejudiced any substantial right of appellant. Whatever error was committed, therefore, in this regard, was error without prejudice, and needs no further consideration.

It is also asserted that the court erred in refusing to charge the jury as requested by appellant. We have carefully examined the requests, and we do not think that the court committed prejudicial error in refusing to give

the requests. The substance of some of them was covered by the court's general charge, and, where such was not the case, the requests in themselves were defective, and the court probably refused them for that reason. It is true that the court might well have charged the jury upon one or more of the subjects suggested in the requests, but the requests in themselves were either so sweeping or so restricted in what was claimed in them as to justify the court in rejecting all of them.

Appellant also strenuously insits that the court erred in overruling its motion for a new trial for various reasons. The principal ground, however, is the one of newly discovered evidence. While it is true that from the affidavits filed by appellant in support of that ground it appears that, if the jury believe the alleged newly discovered evidence set forth in said affidavits, the result will probably be different, yet it is also true that much of the alleged newly discovered evidence is merely cumulative, and that there appears an absolute want of diligence on the part of appellant to obtain the alleged newly discovered evidence at the trial. The record in this regard presents a case where, after trial, a defeated party begins to look up the evidence to sustain the allegations contained in his pleading. Courts cannot grant new trials merely because a defeated party, after an adverse decision, makes a showing that upon a second trial he can produce additional evidence in support of his contentions which will probably turn the decision in his favor. **3** He must use due dilgence to produce his evidence when the case comes on for trial, and, unless he does so, the court is powerless to help him. In this case there is no showing whatever that the plaintiff used any dilegence to produce the alleged newly discovered evidence at the trial. The court, therefore, committed no error in overruling the motion for that reason.

Finally, it is contended that the verdict and judgment are not sustained by the evidence. We are of the opinion that this contention must be sustained. Counsel for respondent frankly concedes that there is no direct evidence connecting

the title to the property in question relied on by respondent with that of appellant, but he insists that there are some facts and circumstances from which the jury were authorized in finding that the appellant had either parted with its title or that the property was not owned by it. We have been unable to find any facts or circumstances from which any such inferences could legitimately be drawn, or upon which such conclusions could be based. By leaving out of consideration the bills of sale, there is no evidence that respondent had any right, title, or interest in or to the property as against appellant. Although appellant cannot avail itself of the supposed error in admitting the bills of sale in evidence for the reasons hereinbefore stated, neither can the respondent avail himself of them as evidence against appellant. There is therefore no evidence sustaining the verdict and judgment. The judgment is therefore reversed, and the case remanded to the district court, with directions to grant a new trial. Costs to appellant.

McCARTY and STRAUP, JJ., concur.